UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Sean Baker,

                          Petitioner,

              -against-

James Conway,

                          Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/25/2019

1:18-cv-00478 (ER) (SDA)

**REPORT AND RECOMMENDATION**

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:

TO THE HONORABLE EDGARDO RAMOS, UNITED STATES DISTRICT JUDGE:

**INTRODUCTION**

Petitioner Sean Baker ("Baker" or "Petitioner"), currently incarcerated at Attica Correctional Facility,[1] in New York State, seeks a writ of habeas corpus as authorized by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. (Pet., ECF No. 1.) A New York County jury convicted Petitioner of murder in the second degree. (*Id*. ¶ 5.) He was sentenced to a term of 20 years to life. (*Id*. ¶ 3.)

Petitioner challenges his conviction on four grounds: (1) he was denied his Sixth Amendment right to counsel when the trial court ignored his motion for reassignment of counsel; (2) he was denied his Sixth Amendment right to the effective assistance of counsel during plea bargaining; (3) his counsel abandoned him at sentencing, denying him his Sixth Amendment right

---

[1] When this action was commenced on January 18, 2018, Petitioner was confined at the Southport Correctional Facility, and Paul Piccolo was listed in the Petition as the Respondent, as he was the then-authorized person having custody of Petitioner. James Conway, the superintendent of Attica Correctional Facility, the facility in which Petitioner currently is incarcerated, now is listed as the Respondent.

to the effective assistance of counsel; and (4) his constitutional right to be present was denied when he was unreasonably excluded from a material pre-trial hearing. (Pet. Mem., ECF No. 2, at 18-47.) On July 13, 2018, Respondent filed his memorandum in opposition to the Petition. (Resp. Mem., ECF No. 17.) Petitioner filed his reply memorandum on September 28, 2018. (Reply, ECF No. 22.)

For the reasons set forth below, I respectfully recommend that the Petition be DENIED in its entirety.

## BACKGROUND

I.    ## Facts Underlying The Conviction[2]

On October 6, 2007, around 1:30 a.m., Barbara Coles ("Barbara") and Denise Coles ("Denise") (collectively the "Coles") went to the restaurant El Patio, located in Bronx, New York. (Tr. at 5, 31.) As they were walking over to the restaurant, the Coles ran into Baker. (*Id*. at 5.) Barbara knew Baker since she had attended school with him for two years. (*Id*. at 5-6.) The Coles went inside to order their meal and then stepped out to smoke a cigarette. (*Id*. at 7.)

Shortly thereafter, a man who the Coles just had seen in the restaurant, and who appeared to be intoxicated, was escorted out of the restaurant by a security guard.[3] (Tr. at 7-8, 73-74.) At the time, Baker, Kareem Warner ("Warner") and Michael Allick ("Allick") also were outside. (*Id*. at 20-21.)[4] The Coles observed as Luna was approached by Baker, Warner and Allick.

---

[2] The relevant facts are taken from the testimony introduced at trial. The transcript of the jury trial is filed at ECF Nos. 1-21 and 1-22. References to the trial transcript are made using "Tr." followed by the transcript page number (*e.g.*, Tr. at 1).

[3] This man later was identified as Ramiro Ramos Luna ("Luna"), the murder victim. (*See* Tr. at 23.)

[4] The Coles also knew Warner and Allick, who had been to the Coles' apartment a number of times. (*See* Tr. at 87.)

(*Id*. at 9.)

A surveillance video outside of the restaurant captured the events that occurred and portions of it were played at the trial. (*See* Tr. at 16-25.) The surveillance video showed all three men grab Luna, and then showed Warner and Allick hold Luna against a wall, while Baker removed personal belongings from Luna's pockets. (*Id*. at 10, 21-23, 69.) Thereafter, the men can be seen bringing Luna to a set of concrete stairs leading to the basement of a nearby pizzeria. (*Id*. at 23-24, 46-47.) There, Allick pushed Luna down the stairs. (*Id*. at 23-24, 71.)

At 2:46 a.m., paramedics arrived at the scene and found Luna unresponsive at the bottom of the stairs. (Tr. at 93-95.) Luna died from his injuries with the cause of death being severe blunt force trauma to the head. (*Id.* at 198-99.)

In January 2008, Barbara Coles was interviewed by the police as part of the investigation into Luna's death. (Tr. at 227.) She was shown the surveillance video and identified Baker, Allick and Warner in the video. (*Id*. at 227-28.) Thereafter, the three men were arrested. (*Id*. at 228.) On February 8, 2008, a Grand Jury indicted Baker, Allick and Warner on two counts of murder in the second degree (felony murder);[5] manslaughter in the first degree; robbery in the first degree; two counts of robbery in the second degree; and robbery in the third degree. (Resp. App. Div. Br., ECF No. 1-8, at 3.)

---

[5] Under New York law, a person is guilty of felony murder (one of the types of second-degree murder) "when . . . acting either alone or with one or more other persons, he commits or attempts to commit[,]" among other listed crimes, "robbery, . . . and, in the course of and in furtherance of such a crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants." N.Y. Penal Law § 125.25(3); *see also Bethea v. Scully*, 834 F.2d 257, 258 (2d Cir. 1987).

II.     **Relevant State Court Proceedings**

A.     **Petitioner's Motion For Reassignment Of Counsel**

In state court, Patrick Bruno ("Bruno") was appointed as counsel for Baker. (Baker Aff., ECF No. 1-16, ¶ 17.) On November 22, 2008, Baker filed a *pro se* form Motion for Reassignment of Counsel on the grounds that his case had been pending for nine months and Bruno failed to: (a) visit him at his place of confinement; (b) inform him of any motions made on his behalf; (c) conduct an investigation into the matters leading up to the action against him; and (d) make any bail requests or reduction applications. (Motion for Reassignment of Counsel, Ex. C to Marshall Aff., ECF No. 1-15, at 36-39.) The record does not reflect that the trial judge ever ruled on this motion, and Baker's case proceeded with Bruno as his counsel through trial and sentencing. (*See* Baker Aff. ¶ 26.)

B.     **January 13, 2010 Pre-Trial Hearing**

During a pre-trial hearing on January 13, 2010, the prosecutors communicated plea offers to each of the three co-defendants, including Baker.[6] (1/13/10 Pre-Trial Tr., ECF No. 1-18, at 8-10.) On the record, the prosecutors stated that Baker could plead guilty to a charge of manslaughter in exchange for a sentence of fourteen years imprisonment, with five years of post-

---

[6] Respondent submitted to the Court in opposition to the Petition an affirmation from John Morabito ("Morabito"), the Assistant District Attorney ("ADA") who conveyed the plea offer to Baker, and who was involved in Baker's sentencing. (Morabito Aff., ECF No. 17-1.) Morabito submits certain facts regarding the plea offer and sentencing. (*See id.*) However, his affirmation is dated July 11, 2018 (*see id.*, p. 4), and was not part of the state court record. Thus, the Court declines to consider it. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

release supervision.[7] (1/13/10 Pre-Trial Tr. at 10.) Before Baker was asked for his response to the plea offer, counsel for Warner requested more time to discuss a similar plea offer with his client. (*Id*. at 10-11.) He stated, "in view of the severity of the sentence, if my client were to be convicted of felony murder, I'd like to have an additional opportunity [to discuss the offer with him]." (*Id*.) The Court granted Warner's request for an extension of time.[8] (*Id*. at 11.) Thereafter, the court asked Bruno if he had had the opportunity to speak with Baker regarding Baker's plea offer. (*Id*. at 12.) Bruno responded that he had and that Baker had rejected the offer.[9] (*Id*.)

**C.    April 6, 2010 Pre-Trial Hearing**

On April 6, 2010, the court held a hearing just prior to jury selection during which the prosecution moved orally, pursuant to New York Criminal Procedure Law ("CPL") § 240.50, for two protective orders relating to trial witnesses. (4/6/10 Proceedings Tr., ECF No. 1-20, at 15-16.) First, in open court in front of Baker and his co-defendants, the prosecution stated that the Coles would be receiving a benefit as a result of their testimony. (*Id.* at 15.) The prosecutor wanted this fact on the record so that defense counsel could decide whether to voir dire potential jurors as to whether it would affect the jurors' evaluation of the witnesses' testimony. (*Id.*) However, the prosecution did not state on the record what the benefit was and instead asked for leave to make an *ex-parte* application to protect the nature of the benefit and the reason for it until just prior

---

[7] The Prosecutor conveyed these offers to Baker and his co-defendants before the hearing began, then left the Defendants alone in the courtroom with their attorneys to confer regarding the offer. (*See* 1/13/10 Pre-Trial Tr. at 4, 6, 8.)

[8] Later, on April 12, 2010, before opening statements in the trial, Warner pled guilty to first-degree robbery and was sentenced to eight years of imprisonment with five years of post-release supervision. (4/12/10 Proceedings Tr., ECF No. 1-20, at 379-91.)

[9] Allick also rejected his plea offer. (1/13/10 Pre-Trial Tr. at 11-12.)

to the Coles' testimony. (*Id*. at 15-16.) The prosecution also sought to make an *ex-parte* application for a protective order to protect the name of a potential witness, unless and until that person were to testify. (*Id*. at 16, 23.) As grounds for both protective orders, the prosecution cited danger of physical harm, an adverse effect upon the legitimate needs of law enforcement and security of the witnesses. (*Id*. at 22-23, 26.)

Counsel for Allick requested that the prosecution's applications be made in the presence of defense counsel, with the directive not to share the disclosed information with their clients until immediately prior to the respective witnesses' testimony. (4/6/10 Proceedings Tr. at 23-26.) Counsel for all defendants, including Bruno,[10] agreed to this proposal. (*Id*. at 25.) The hearing then was moved to the jury room, outside of the defendants' presence, where the prosecution addressed the substantive basis for the protective orders. (*Id.* at 27.) The Coles reportedly had been threatened in connection to their planned testimony[11] and as a result, both were fearful and would be moved to new housing. (*Id*. at 28.) The prosecution explained that, if the Coles testified, they would be moved the same day, but argued that, if the defendants were aware of the move prior to that date, the defendants might leak the information to the people who had threatened the Coles, risking harm to the witnesses. (*Id*. at 29.)

The second motion related to withholding the name of the prospective witness Orlando

---

[10] Bruno also asked to raise an additional argument concerning the benefit to the Coles, though the Court did not immediately entertain Bruno's request. Bruno did not specify what he wanted to raise, and it is unclear from the record if he ever did so. (*See* 4/6/10 Proceedings Tr. at 25-26.)

[11] In late March 2010, an individual referred to as "Day-Day" had threatened Barbara that if she and Denise testified, he would shoot everyone in the court room. (*See* 4/6/10 Proceedings Tr. at 27.) In addition, prior to the March 2010 threat, an unidentified person asked one of the Coles to discuss her testimony with him in an alley, while she was outside smoking a cigarette. (*See id*. at 28.)

Vargas ("Vargas").[12] Vargas was interviewed by police and indicated that he had witnessed Luna's murder. (4/6/10 Proceedings Tr. at 29-30.) However, since his statement, the prosecutors had not successfully met with Vargas, nor had Vargas responded to the prosecutors' attempts to contact him. (*Id.* at 30.) The prosecutors sought to protect Vargas' identity because they believed Vargas possibly was concerned for his safety and was aware that he would be placing himself in a difficult position by testifying. (*Id.* at 30.)

The court granted the prosecution's applications for both protective orders and directed counsel not to disclose any of the information that had been discussed in the jury room to their clients. (*Id.* at 31.) Allick's counsel then moved for a motion *in limine* seeking to exclude any reference, during opening statements or when questioning witnesses, to the fact that the Coles were moved. (*Id.*) The court granted the motion. (*Id.* at 32.) The housing benefit never was raised during trial. (*See* Tr. at 1-91.)

The following day, the prosecutor confirmed that he spoke to Vargas and intended to call him as a witness at trial. (4/6/10 Proceedings Tr. at 64.) During voir dire, Vargas was named as a potential testifying witness, on the record, in front of all defendants. (*Id.* at 65.) However, Vargas did not testify at trial.

### D.   Trial

A jury trial commenced on April 14, 2010 before the Honorable Michael Gross, a Justice of the Supreme Court of the State of New York, Bronx County. (Tr. at 1-404.) The jury convicted

---

[12] The prosecutor originally stated that Vargas's first name was Osvaldo, but during voir dire identified him as Orlando. (4/6/10 Proceedings Tr. at 65.)

Baker on April 20, 2010 of second degree, felony murder.[13] (*Id.* at 398-99.)

### E.        **Sentencing Hearing**

Prior to sentencing on May 12, 2010, the Department of Probation completed a Pre-Sentence Report ("PSR") as to Baker. (PSR, Ex. E to Marshall Aff., ECF 1-15, at 43-52.) The PSR incorrectly indicated that Baker's conviction came about as a result of a plea, instead of a jury verdict, and listed an incorrect lawyer under "Defense Counsel." (*Id.* at 43.) The PSR described that, on October 6, 2007, "the defendant acting in concert with Kareem Walker and Michael Allick, caused the death of Ramiro Ramos-Luna, by throwing him down a flight of stairs onto a concrete pavement during the commission of a robbery." (*Id.* at 44.) The report stated that, during his interview with probation, Baker maintained his innocence and wanted to appeal his conviction. (*Id.* at 45.) Under the "Legal History" section, the PSR indicated that Baker had a prior felony history, a pending robbery charge, and that "[t]he present offense [was] an escalation in the defendant's criminal behavior." (*Id.*) The PSR also indicated that Baker was associated with the "the Bloods" gang. (*Id.*) As to Baker's background, the PSR made note of the fact that Baker was one of seven children in his family, that his parents divorced in 1994, that his father had provided no financial or moral support to Baker or any of his siblings, and that Baker "resided in various shelters before finding stable housing." (*Id.* at 45-46.)

At the sentencing hearing on May 12, 2010, Bruno confirmed that he reviewed the PSR. (Sentencing Tr., ECF No. 1-23, at 3.) The prosecutor noted slight inaccuracies in the PSR and confirmed on the record that the conviction was a result of conviction by jury, not a guilty plea.

---

[13] Allick also was found guilty at trial. (Tr. at 398.) Allick received a sentence of 25 years to life. (Resp. App. Div. Br. at 3 n.1.) On February 23, 2012, the Appellate Division affirmed Allick's conviction. *See People v. Allick*, 92 A.D.3d 588 (1st Dep't 2012).

(*Id*.) Bruno also pointed out that the PSR incorrectly referred to Baker as a "predicate felon" when in fact he was a "youthful offender." (*Id*. at 8-9.) The judge acknowledged that mistake. (*Id*. at 9.)

The prosecutor addressed the court and asked for a maximum sentence of twenty-five years to life. (Sentencing Tr. at 4-5.) He argued that Baker "should be isolated from open society for as long a period of time if he does not accept his responsibility, because he's a danger to the community." (*Id*. at 4.) The prosecutor argued further that "[t]he responsibility for the death of the deceased is directly attributable to" Baker, as well as to Allick, arguing that the murder of Luna was senseless. (*Id*. at 4-5.) On behalf of Baker, Bruno stated to the judge, "Your Honor, there is nothing I could add. You were present for the jury trial, you obviously paid very careful attention. I would be foolish to rehash any facts at this time." (*Id*. at 5.) When asked whether he wished to speak, Baker replied "[n]ot at all." (*Id*. at 5.)

The judge made the following comments before handing down the sentence of 20 years to life:

> The credible evidence in this case established . . . that you, along with your co-defendants, robbed Mr. Ramos Luna in the early morning hours of October 6, 2007 . . . and that further, you assisted in the acts . . . of throwing the victim down a flight of stairs, leading to his death.
>
> * * *
>
> In [sentencing you], I consider not only your past record, but note that you have not in any way, obviously prior to trial, but here today, weeks after the trial, accepted any responsibility for what you've done. Without accepting responsibility for your conduct, it will be impossible for rehabilitation to begin.

(Sentencing Tr. at 5-6.) After the judge imposed this sentence, Baker pled guilty to an unrelated pending robbery charge, for which he was sentenced to a four-year determinate term of imprisonment, followed by a period of five years post release supervision, to be served

concurrently.[14] (*Id*. at 9-14.)

**F.     Direct Appeal**

On June 4, 2010 Baker filed a timely Notice of Appeal. (*See* 9/3/14 Decision, ECF No. 1-11, at 1.) However, as discussed in Background Section II(G) below, Baker did not perfect the appeal until it was consolidated with the appeal of his later-filed CPL § 440.10 Motion. (*See id.; see also* Cert. Granting Leave, ECF No. 1-10.)

**G.     CPL § 440.10 Motion**

On April 15, 2014, Baker filed a motion in the trial court to vacate his judgment of conviction under CPL § 440.10 citing ineffective assistance of counsel during plea bargaining and at sentencing. (440.10 Motion, ECF No. 1-14, at 1, 5.) Specifically, Baker alleged that Bruno "failed to adequately explain the meaning of felony murder to [defendant,] did not properly advise him about a plea offer . . . [and] failed to inform [Petitioner] of his potential sentence exposure if convicted at trial." (*Id*. at 8.) Baker also argued that Bruno "failed to investigate any mitigating evidence and failed to make any argument or present any evidence at his sentencing hearing." (*Id*.) In connection with his § 440.10 Motion, Baker filed an affidavit which stated, among other things, that, during their first meeting by video,

> Mr. Bruno explained that I could be found guilty of felony murder because I was acting in concert with Kareem Warner and Michael Allick. I did not understand what this meant and Mr. Bruno made no attempt to educate me as to its meaning.
>
> * * *
>
> In this conversation, Mr. Bruno explained the possibility of a plea deal, and he told me that he might be able to get me a sentence of 10 years for me through

---

[14] The open robbery charge pertained to a November 21, 2007 incident where Baker and another defendant stole a coat from a Mr. Velasquez. Baker pled guilty to robbery in the second degree. (Sentencing Tr. at 9-12.)

> a plea agreement. However, he did not explain the People's case against me or my chances at trial, and he did not tell me what the minimum or maximum sentences were for felony murder in New York.

(Baker Aff. ¶¶ 17, 19.)

Baker also stated in his affidavit that, although Bruno advised him that the Coles would testify at trial and that there was a surveillance video of the murder, Bruno did not explain what the evidence was against Baker or how damaging it could be. (*See* Baker Aff. ¶¶ 18, 20, 24.) When the prosecution offered Baker a plea deal, Baker claims that Bruno only spoke to him about it briefly as it was presented and gave no advice:

> He gave me no advice as to whether I should or should not accept the plea agreement. He did not even ask me whether I understood the terms of the offer. He simply stated that this was the offer and asked if I wanted to accept it, leaving me to make an uninformed, on-the-spot decision.

(*Id*. ¶¶ 28-29.) Baker further stated that he "never understood how I could be guilty of murder when I did not take Romero Ramos Luna's wallet and did not push him down the stairs. I did not know that Mr. Luna would be robbed and I never received any money or other personal items belonging to Mr. Luna as a result of the robbery." (*Id*. ¶ 38.)

With regard to sentencing, Baker stated that Bruno failed to confer with him prior to sentencing; failed to instruct him to make a statement on his own behalf; and failed to provide a copy of the PSR to him before, during or after sentencing, which prevented Baker from correcting errors in the report. (Baker Aff. ¶¶ 39, 41, 43, 44.) Baker also stated that "Bruno did not conduct any investigation in connection with my sentencing. He did not speak to me to learn facts about me or my childhood. To my knowledge, he did not speak to my mother or any other member of my family either to learn about my past." (*Id*. ¶ 39-40.) Baker also took issue with the fact that Bruno advanced no argument on his behalf at sentencing. (*Id*. ¶¶ 46.)

In support of Baker's § 440.10 Motion, his then-counsel, Katherine Marshall, filed an affirmation. (Marshall Aff., ECF No. 1-15.) In her Affirmation, Marshall states: "I spoke with Patrick Bruno on August 20, 2013. Contrary to Mr. Baker's affidavit, Mr. Bruno claims that he properly advised Mr. Baker regarding his potential sentence exposure at trial and his plea offer. Mr. Bruno provided no reason for his failure to advocate for Mr. Baker at sentencing other than Mr. Bruno's belief that his advocacy would not have resulted in a more favorable sentence." (*Id.* ¶ 39.)

In opposition to Petitioner's § 440.10 Motion, the government filed an affirmation by ADA Emily Aldridge stating,

> On May 30, 2014, the undersigned had a telephone conversation with Mr. Bruno, a member of the 18-B Panel in Bronx County who was admitted to the bar in 1980. He explained that he had advised defendant to accept a plea. He explained the charges against defendant, including felony murder, and the sentencing exposure upon conviction. According to Mr. Bruno, defendant was adamantly against taking any plea. Mr. Bruno explained the evidence against defendant, but defendant believed the video evidence of the crime was too foggy to definitively identify him. Mr. Bruno reminded him that there were two eyewitnesses who had known defendant for many years and were able to identify him. Defendant counted on the eyewitnesses not testifying. Defendant claimed that the People did not have a strong case against him. During trial, defendant sat at the defense table grinning and making comments in the presence of the jury. Mr. Bruno made several visits to the pens to speak with defendant, and advised him to "wipe the grin off his face" and "look repentant." Co-defendant Michael Allick was listed first on the indictment, so Allick's attorney would address the jury or any witnesses before Mr. Bruno did. Regarding the sentencing, Mr. Bruno spoke with defendant before the sentencing, and they were able to agree to a plea to an unrelated robbery case. He further explained that telling a judge about a defendant's difficult childhood backfires the vast majority of the time and does not mitigate killing. He prefers to make brief records in front of sentencing judges so as not to "put the cart before the horse" for any future appeal.

(Aldridge Aff., ECF No. 1-13, ¶ 8.)

Baker's § 440.10 Motion was denied by Justice Gross on September 3, 2014. (9/3/14 Decision.) The court found, applying the standard set forth by the Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668 (1984), and "viewing the evidence and circumstances of [the] case in its totality," that Bruno "provided [Baker] with meaningful representation, which did not fall outside the 'wide range of professionally competent assistance'[.]" (*Id.* at 4 (quoting *Strickland*, 466 U.S. at 690).) The court found that Petitioner's claim of ineffectiveness regarding his plea failed because the record indicated he knowingly rejected the plea offer at the January 13, 2010 pre-trial hearing. (*Id.* at 6.) The court reasoned that, because Warner's counsel requested more time to discuss the plea deal with his client due to the severity of the possible sentence if convicted of felony murder, Baker should have been fully aware of his potential sentence and could have made a similar request. (*Id.* at 6-7.) Moreover, the court found that Baker's claims regarding Bruno's failure to discuss the plea and properly advise were "directly refuted by the trial record, which clearly established[d] that [Baker] was fully aware of the specific plea available, had adequate opportunity to discuss the offer with his attorney, and rejected counsel's efforts to persuade him to accept the proposed disposition." (*Id.*) Thus, the court denied Baker's claim without a hearing pursuant to CPL § 440.30(4)(d). (*Id.* at 7.) The court also found that both Baker's and ADA Aldridge's affidavits demonstrated that Bruno explained felony murder and made attempts to discuss the case thoroughly and advised Baker of his options. (*Id.* at 7-8.)

Justice Gross also found Baker's claim of ineffectiveness of counsel at sentencing to have no merit. The court noted that the court clerk informed Baker that he would have an opportunity to speak on his own behalf and, thereafter, the court asked Baker if he wished to make a statement, but that Baker "unequivocally responded, 'Not at all.'" (9/3/14 Decision at 8.) Moreover, the judge found that there were no mitigating circumstances in the facts of the case and that even if Baker's counsel had focused on his difficult upbringing, that would not have

overcome Baker's lack of remorse and refusal to accept responsibility. (*Id*. at 9.) Finally, the court noted that, without an affidavit from Bruno or any other witness, Baker's allegations were devoid of any sworn allegations and appeared to be self-serving.[15] (*Id*. at 9-10.)

### H.   Appeal Of § 440.10 Motion

On February 2, 2015, Baker sought leave to appeal the denial of the motion to vacate judgment, which Justice David Friedman of the Appellate Division, First Department granted. (Cert. Granting Leave.) On February 17, 2015, Baker filed a timely notice of appeal and that appeal was consolidated with the pending and unperfected appeal of his conviction originally filed on June 4, 2010. (Pet. App. Div. Br., ECF No. 1-9, at 1.) In his appellate brief, Baker asserted that he: (1) was denied his constitutional and statutory right to be present at a material stage of trial when he, but not his attorney, was excluded from the *ex parte* hearing as to the prosecution's motions for protective orders; (2) he was denied his constitutional right to counsel when the trial court failed to consider or address his *pro se* motion for assignment of new counsel; and (3) he was denied his constitutional right to effective assistance of counsel during plea bargaining and (4) sentencing. (Pet. App. Div. Br. at 3-4.)

On May 26, 2016, the Appellate Division affirmed both Baker's conviction and the trial court's denial of his 440.10 Motion. *People v. Baker*, 139 A.D.3d 591 (1st Dep't 2016). The Appellate Division found that Baker's right to be present was not violated because he did not "show his presence would have been useful," his arguments that he could have contributed were unpersuasive, and, "[i]n any event, any potential input from [Baker] was outweighed by a valid

---

[15] Although Bruno was alive when the motion to vacate judgment of conviction was filed, he passed away in May 2015.

concern for the witnesses' safety." *Id*. at 591. The court also found that Baker abandoned his *pro se* motion for new counsel "by failing to call the court's attention to the fact that the existing motion remained unresolved." *Id*. at 592. In addition, the court found that the standard form motion Baker used did not contain the specific factual allegations necessary to trigger the court's obligation to make a minimal inquiry. *Id*.

Regarding Baker's claims of ineffective assistance of counsel, the Appellate Division found that, "[i]n all respects, [Baker] received effective assistance of counsel under the state and federal standards." *Id*. (citing, *inter alia*, *Strickland*, 466 US at 668.) Regarding plea-bargaining, the court found that Baker's "affidavit was inconsistent with the trial record, self-contradictory, [and] uncorroborated by other evidence." *Id*. As such, the court found that the trial court properly exercised its discretion in denying Baker's § 440.10 Motion without a hearing. *Id*. With regard to sentencing, the court found that Baker, "who received a less than maximum sentence despite the heinous facts of the crime, ha[d] not shown that the additional steps he fault[ed] his counsel for omitting could have led to even greater leniency." *Id.*

On July 7, 2016, Baker sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. (App. For Leave, ECF No. 1-5.) The Honorable Eugene M. Fahey, Judge of the Court of Appeals, denied leave to appeal on October 24, 2016. (10/14/16 Order, ECF No. 1-1.)

### III.    Habeas Petition

Baker filed the instant Petition in this Court on January 18, 2018. (Pet., ECF No. 1.) In his Petition, Baker raises four grounds for relief, all of which he previously lodged in the state courts. He asserts that: (1) he was denied his Sixth Amendment right to counsel when the trial court

ignored his motion for new counsel; (2) Bruno's incompetence denied him his Sixth Amendment right to the effective assistance of counsel at the plea stage; (3) Bruno's abandonment of Petitioner at sentencing denied him his Sixth Amendment right to effective assistance of counsel; and (4) the trial court denied Petitioner his constitutional right to presence by unreasonably excluding him from a material pre-trial hearing. (Pet. Mem. at 16.)

### LEGAL STANDARDS

I. **AEDPA Generally**

Under AEDPA, federal courts reviewing habeas petitions must accord substantial deference to state court decisions. Section 2254(d) provides, in relevant part, that a court may grant a writ of habeas corpus on a claim that has been previously adjudicated on the merits by a state court only if the state-court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A claim is considered "adjudicated on the merits" when it is decided based on the substance of the claim advanced, rather than on a procedural, or other, ground. *See Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision," and arrives at a different

result. *Williams*, 529 U.S. at 405-06. An "unreasonable application" of clearly established law pursuant to this provision occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

In addition, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).  "The Supreme Court has made clear that a 'state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Cardoza v. Rock*, 731 F.3d 169, 177–78 (2d Cir.2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). However, a state court's finding might represent an unreasonable determination of the facts "if the state court failed to weigh all of the relevant evidence before making its factual findings[,]" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d. 109, 121 (2d Cir. 2015) (internal quotation marks and citation omitted), or where "reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, or where the court ignored highly probative and material evidence." *Garguilio v. Heath*, 586 F. App'x 764, 766 (2d Cir. 2014) (internal citation omitted).

## II.   Adequate And Independent State Ground Doctrine

If a state court rejects a claim based on a state procedural rule that constitutes an adequate and independent ground for the decision, it may not be reviewed by a federal habeas court. *See Wilkerson v. N.Y. State Bd. of Parole*, No. 13-CV-03817 (GHW), 2015 WL 678581, at *9 (S.D.N.Y. Feb. 17, 2015); *see also Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003). "A procedural rule is considered adequate if it is firmly established and regularly followed by the state in question." *Davis v. Walsh*, No. 08-CV-04659, 2015 WL 1809048, at *9 (E.D.N.Y. Apr. 21, 2015) (internal quotation marks and citation omitted). "To be independent, the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case[.]" *Id*. (internal quotation marks and citations omitted).

The merits of a procedurally defaulted claim may not be reviewed by a federal court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman* v. Thompson, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).[16]

## III.   Ineffective Assistance Of Counsel

To establish a constitutional violation for ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance "fell below an objective standard of

---

[16] The "cause" prong of the cause-and-prejudice test ordinarily requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The "prejudice" prong requires that the defendant suffer "actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982) (internal quotation marks and citation omitted). The petitioner must show that the errors at trial created an "actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 508 (S.D.N.Y. 2005) (quoting *Frady*, 456 U.S. at 170).

reasonableness[,]" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Under the first *Strickland* prong, there is a "strong presumption" that a lawyer's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "In considering whether counsel 'failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances,' *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), the Court looks to the totality of the record and must make 'every effort . . . to eliminate the distorting effects of hindsight.'" *Guerrero v. United States*, No. 07-CR-00248 (GHW), 2017 WL 1435743, at *6 (S.D.N.Y. Apr. 20, 2017) (quoting *Strickland*, 466 U.S. at 688-89). Under the second *Strickland* prong, the petitioner must demonstrate that the ineffective assistance prejudiced the defense, which means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, including the overall integrity of the proceeding." *Id*.

"The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). Moreover, under AEDPA, a petitioner must show that the state court's application of the *Strickland* standard was not simply incorrect, but objectively was unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal citations omitted).

Thus, on habeas review, a federal court may reverse a state court ruling "only where it was so lacking in justification that there was . . . no possibility for fair-minded disagreement." *Fischer*, 780 F.3d at 562 (internal quotation marks omitted).

## DISCUSSION

### I.  Petitioner's Claim Regarding His Motion For New Counsel Is Procedurally Barred

Baker argues that his Sixth Amendment right to counsel was violated when the trial court failed to address his *pro se* motion for new counsel, since a "complete breakdown of communication" occurred between him and trial counsel. (Pet. Mem. at 18.) The Appellate Division denied this claim, finding that Baker abandoned his motion because he did not call it to the trial court's attention and, in any event, because the "typical standard form motion" used by Baker "did not contain the specific factual allegations of serious complaints about counsel necessary to trigger the court's obligation to make a minimal inquiry." *Baker*, 139 A.D.3d at 592.

As set forth above, federal courts generally will not consider a federal issue in a case "if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (citation omitted). However, the adequacy of a state procedural bar to the assertion of a federal question is itself a federal question that the Court must consider. *See id.* "A procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Donaldson v. Ercole*, No. 06-5781-PR, 2009 WL 82716, at *1 (2d Cir. Jan. 14, 2009) (internal citation, quotation marks, and alterations omitted). Moreover, "[t]here are . . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee*, 534 U.S. at 376.

For the reasons set forth below, the Court finds that the Appellate Division's determination that Baker had abandoned his claim based on his motion for new counsel constitutes an adequate and independent state ground for the denial and that Baker has not shown cause for the default or prejudice. Thus, his claim is procedurally barred.

### A.   New York's Abandonment Rule Is Firmly Established and Regularly Followed

"Abandonment is firmly established and regularly followed in New York." *Jamison v. Griffin*, No. 15-CV-06716 (PKC) (AJP), 2016 WL 1698350, at *47 (S.D.N.Y. Apr. 27, 2016), *report and recommendation adopted*, 2016 WL 4030929 (S.D.N.Y. July 27, 2016) (citing cases); *see also Miller v. Warden of Sing Sing Corr. Facility*, No. 13-CV-4576 (BMC), 2018 WL 3518503, at *2 (E.D.N.Y. July 20, 2018) ("It is well established under New York law that to preserve a claim, a defendant must not only move for the relief he seeks but must call the motion to the trial court's attention before taking substantial action that indicates that he is no longer interested in the motion.") (citing *People v. Rodriguez*, 50 N.Y.2d 553, 557-58 (1980)). "Numerous cases in the Appellate Divisions have specifically held that, if a criminal defendant files a motion and then takes no action to pursue it, but instead goes forward with his trial, the motion is deemed abandoned." *Miller*, 2018 WL 3518503, at *2 (citing cases); *see also Bailey v. Ercole*, No. 06-CV-05811 (PKC) (MHD), 2007 WL 4707738, at *8 (S.D.N.Y. Aug. 17, 2007) (citing, *inter alia*, *People v. Graves*, 85 N.Y.2d 1024, 1027 (1995) (claim regarding prosecutor's failure to turn over a police expense report deemed abandoned when court deferred discussion and defense counsel never mentioned again); *People v. Ramos*, 35 A.D.3d 247, 247 (1st Dep't 2006) (holding an issue abandoned where defendant failed to alert the trial court to its lack of a ruling on the matter)).

**B.**     <u>**Petitioner's Case Did Not Involve An Exorbitant Application Of The Rule**</u>

Baker argues that, under the exceptions set forth in *Lee,* the Court should consider his claim notwithstanding the procedural bar. (Reply at 12-16.) In *Lee*, the Supreme Court articulated three "guideposts" for identifying whether a generally sound rule is inadequate:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 239-40 (citing *Lee*, 534 U.S. at 381-85).

Applying the three guideposts, the Court finds that this is not one of the "small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim." *Lee*, 534 U.S. at 381-85. Baker acknowledges that the first factor is neutral since the trial court did not rule on his motion for new counsel. (Reply at 13.) The second factor weighs in favor of a procedural bar. As set forth above, New York courts consistently have applied the abandonment doctrine in similar circumstances. The third factor also weighs in favor of a procedural bar. Baker had multiple opportunities over more than a one-year period to raise with the trial court the issue of new counsel, including at trial and sentencing proceedings, but he failed to do so. Thus, it cannot be said that Baker "substantially complied" with the rule.

For these reasons, the Court finds that the Appellate Division's denial of Baker's claim regarding his motion for new counsel on abandonment grounds is an adequate and independent state ground and, thus, that claim is procedurally barred. *See Miller*, 2018 WL 3518503, at *1 (finding habeas petitioner's Sixth Amendment claim based on trial court failed to consider motion

for new counsel procedurally barred when deemed abandoned by state appellate court); *see also Jones v. Racette*, No. 15-CV-07297 (JPO), 2016 WL 7189851, at *8 (S.D.N.Y. Dec. 12, 2016) (abandonment is an independent and adequate state procedural rule that bars habeas relief).

### C.   Petitioner Has Not Demonstrated Cause For The Default Or Prejudice

In order to overcome a procedural bar, Baker would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice.'" *Jamison*, 2016 WL 1698350, at *47 (quoting *Harris v. Reed*, 489 U.S. 255, 262 (1989)). A miscarriage of justice is demonstrated only in extraordinary cases, such as where a constitutional violation results in the conviction of someone who is actually innocent. *See Murray*, 477 U.S. at 496.

To start, given the video and testimonial record evidence against Baker, he has not established that he is actually innocent. Thus, there is no miscarriage of justice. Cause can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." *Miller*, 2018 WL 3518503, at *2 (quoting *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (internal quotation omitted)).

Here, Baker has not articulated any cause for not raising his motion with the trial court and, thus, cannot raise it now. *See Miller*, 2018 WL 3518503, at *2 ("The obvious concern of the rule is that a defendant, having interposed a request for relief, should not be permitted to keep it in his back pocket, to be reasserted on appeal only if he is unhappy with the result of his trial."). Moreover, Baker cannot show prejudice. The Appellate Division found that Baker failed to assert

"specific factual allegations of serious complaints about counsel necessary to trigger the court's obligation to make a minimal inquiry[,]" let alone good cause to warrant the substitution of counsel. *Baker*, 139 A.D.3d at 592 (citing *People v. Porto*, 16 N.Y.3d 93, 99 (2010) (indigent's request for new counsel not to be "granted casually")) (internal citation omitted). Further, the Appellate Division found that Baker received effective assistance of counsel. To the extent that Baker contends otherwise, Baker had the opportunity to raise those claims (as he has done here and which are discussed below). As such, the Court finds no reason to consider Baker's claim, despite the procedural bar. *See Miller*, 2018 WL 3518503, at *2 (petitioner did not establish cause or prejudice to overcome procedural bar of claim based on *pro se* motion for new counsel).

II.     **Petitioner's Claim For Ineffective Assistance Of Counsel At The Plea Stage Should Be Denied**

Baker asserts that his right to counsel was violated by Bruno's failures as counsel during the plea stage and that the state courts' decisions denying his ineffective assistance claim constituted an unreasonable application of *Strickland*. (Pet. Mem. at 22-30.) Respondent counters that the record supports the trial court's and Appellate Division's findings that Baker's claims were belied by the trial record. (Resp. Mem. at 8-9.)

"An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the plea offer, may constitute constitutionally deficient assistance." *Abraham v. Lee*, No. 13-CV-02525 (RWS), 2014 WL 3630876, at *9 (S.D.N.Y. July 22, 2014) (citing *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999)). However, a "[petitioner] must show that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under

the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). "The petitioner must provide objective evidence, beyond his own 'self-serving, post-conviction testimony,' that he would have pled guilty had he received proper advice." *Abraham,* 2014 WL 3630876, at *9 (citing *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998)).

Baker attempts to argue that the Appellate Division unreasonably applied *Strickland* by raising the same arguments made to the state courts as to why Bruno's conduct was deficient, including allegations that other than relaying the plea offer to Baker, Bruno provided no further advice and did not explain felony murder or inform Baker of his maximum potential sentence. (Pet. Mem. at 25-28.) However, the state court rejected these allegations and the only question before this Court is whether the state court's factual determination regarding Bruno's conduct were reasonable.[17] *See* § 2254(d)(2).

Baker has not shown that the state courts' determinations were unreasonable or pointed to any clear and convincing evidence to contradict the state court's determination. In considering Baker's § 440.10 Motion, the court considered the trial record, Baker's own affidavit and ADA Aldridge's affidavit stating that she spoke with Bruno and Bruno confirmed that he explained the charges against Baker, including felony murder and the sentence exposure, and advised Baker to accept a plea, but that Baker refused. (9/3/2014 Decision at 9.) In light of this evidence, the court found that Baker's various assertions that Bruno failed to fully advise him regarding the plea offer

---

[17] "Section 2254(e)(1) also provides a standard for evaluating a state court's findings of facts: '[A] determination of a factual issue made by a State court shall be presumed to be correct' unless the petitioner rebuts that presumption 'by clear and convincing evidence.'" *Fernandez v. Capra*, 916 F.3d 215, 221 n.1 (2d Cir. 2019). "The Supreme Court has declined to define the 'precise relationship between § 2254(d)(2) and § [2254] (e)(1).'" *Id.* (quoting *Brumfield v. Cain*, 135 S.Ct. 2269, 2282 (2015)). Yet, the Court may "proceed under the assumption that 'satisfaction of either inquiry is sufficient.'" *Id.* (quoting *Channer v. Brooks*, 320 F.3d 188, 194 (2d Cir. 2003).

were not credible, particularly when Baker's claims were not supported by sworn allegations to support his claim, including an affidavit from Bruno, who was alive at the time. To the contrary, the court found that Baker's own affidavit supported the conclusion that he received effective assistance, as it demonstrated that "counsel made attempts to discuss the case with [him] and the possibility of pleading guilty[,]" and that counsel informed Baker about the evidence against him. (*See* 9/3/14 Decision at 5-8.) On this record, the Court cannot find that the state courts' determination of the facts was unreasonable such that fair-minded jurists would have to conclude otherwise. *See Cardoza*, 731 F.3d at 182 (state court's determination that petitioner aware of plea offer not unreasonable determination of facts).

Nor has Baker shown "a reasonable probability" that he would have accepted the plea offer prior to trial. *See Lafler*, 566 U.S. at 164. The Court will not accept at face value Baker's self-serving, post-conviction statements that he would have accepted the plea if he had received proper advice. *See Abraham,* 2014 WL 3630876, at *9. The record reflects that, prior to his conviction, Baker was against taking a plea. (Aldridge Aff. ¶ 8 ("According to Mr. Bruno, defendant was adamantly against taking any plea."); Baker Aff. ¶ 19 ("Mr. Bruno explained the possibility of a plea deal, and he told me that he might be able to get a sentence of 10 years for me through a plea agreement. . . . I told Mr. Bruno I did not want to serve 10 years in prison").) Indeed, there is no record evidence that, prior to his conviction, Baker expressed any interest in pleading guilty. Even after his conviction, he did not accept responsibility for his acts. (*See* PSR at 45 of 52 ("At the interview [prior to sentencing], the defendant maintained that he is innocent and wants to appeal his conviction."); Sentencing Tr. at 6 ("In [sentencing you], I consider not only your past record, but note that you have not in any way, obviously prior to trial, but here

today, weeks after the trial, accepted any responsibility for what you've done.").) In these circumstances, Baker has not shown a reasonable probability that he would have taken the plea, but for Bruno's alleged ineffective assistance of counsel.

Finally, to the extent that Baker argues that he should have been afforded an evidentiary hearing by the trial court, that claim is not cognizable on habeas review as "the Constitution does not compel states to provide post-conviction proceedings for relief." *Jamison v. Griffin*, No. 15-CV-06716 (PKC) (AJP), 2016 WL 1698350, at *55 (S.D.N.Y. Apr. 27, 2016) (alleged errors in post-conviction proceedings not cognizable on habeas review) (citing cases), *report and recommendation adopted*, 2016 WL 4030929 (S.D.N.Y. July 27, 2016).

For these reasons, I recommend that Baker's ineffective assistance claim at the plea stage be denied.

### III.   Petitioner's Claim For Ineffective Assistance Of Counsel At Sentencing Should Be Denied

Next, Baker alleges that he received ineffective assistance of counsel because Bruno "abandoned" him at sentencing. Sixth Amendment protections extend to sentencing; a critical portion of trial. *See Gardner v. Fla.*, 430 U.S. 349, 358 (1977) ("[S]entencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel."); *Glover v. U.S.*, 531 U.S. 198, 200-01 (2001) (ineffectiveness of counsel during sentencing can result in *Strickland* prejudice). Baker argues that the Appellate Division committed error by applying the *Strickland* standard, rather than a presumption of prejudice standard as applied in *United States v. Cronic*, 466 U.S. 648 (1984). (Pet. Mem. at 31-33.) Baker also argues that, even if *Strickland* applies, the state courts unreasonably denied his ineffective assistance claim. Respondent argues in response that the state courts properly applied *Strickland* and that they did so reasonably.

(Resp. Mem. at 29-30.)

### A.    The State Court Properly Applied The *Strickland* Standard

In *Cronic*, the Supreme Court held that there are "circumstances that are so likely to prejudice the accused," that prejudice may be presumed without the need to litigate whether prejudice was actually suffered. *Cronic*, 466 U.S. at 658. The presumption exists where there is a "complete denial of counsel[,]" where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[,]" or where the accused's counsel is called upon to render assistance under circumstances in which it is unlikely that any lawyer would be able to provide effective assistance. *Id*. at 659-60. "[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id*. at 662.

Baker argues that the Appellate Division erred in applying the *Strickland* standard, but does not cite to any Supreme Court precedent which would require the application of *Cronic* under the circumstances presented here. Thus, it cannot be said that the state court's decision unreasonably applied federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (state court did not unreasonably apply federal law in applying *Strickland* over *Cronic* when Supreme Court cases gave "no clear answer to the question presented, let alone one in [petitioner's] favor."); *see also Lopez v. Artus*, No. 03-CV-07087 (RJH), 2005 WL 957341, at *8 (S.D.N.Y. Apr. 25, 2005) (state courts did not unreasonably apply federal law in finding that *Strickland*, and not *Cronic*, applied).

### B.    The State Court Did Not Unreasonably Apply Strickland

The Appellate Division denied Baker's claim finding that Baker, "who received a less than

maximum sentence despite the heinous facts of the crime, has not shown that the additional steps he faults his counsel for omitting could have led to even greater leniency." *Baker*, 139 A.D.3d at 592. Baker has failed to show that this determination was unreasonable.

Baker argues that Bruno's conduct was deficient because he failed to make potentially-persuasive arguments thus abandoning his role as advocate; failed to share the PSR with Baker; and failed to investigate mitigating evidence. (Pet. Mem. at 35-37.) In particular, Baker argues Bruno could have made arguments minimizing his role in the crime and highlighting Baker's difficult upbringing and that his failure to do so prejudiced Baker. (*See id.* at 37-39.) However, in finding a lack of prejudice, the Appellate Division rejected Baker's contention that raising these arguments would have resulted in a less severe sentence and Baker has not shown that the state court's decision was unreasonable.

The sentencing judge, having presided over Baker's trial, was well aware of the facts regarding the case against Baker and Baker's role in the crime. In imposing the sentence, the judge remarked: "The credible evidence in this case established . . . that you, along with your co-defendants, robbed Mr. Ramos Luna in the early morning hours of October 6, 2007 . . . and that further, you assisted in the acts . . . of throwing the victim down a flight of stairs, leading to his death." (Sentencing Tr. 5-6.) The use of the term "assisted" here shows that the sentencing judge was aware that Baker was not the individual who pushed Luna down the stairs, rather that he assisted in the act. Indeed, Baker received a lesser sentence than his co-defendant Allick, who was the one to fatally push Luna. *See People v. Allick*, 92 A.D.3d 588 (1st Dep't 2012).

Further, there is no evidence that Baker could have made a credible argument based on remorse or acceptance of responsibility. The PSR noted that Baker maintained his innocence even

after he was convicted. (PSR at 45 of 52 ("At the interview, the defendant maintained that he is innocent and wants to appeal his conviction.").) The trial court reviewing Baker's § 440.10 Motion rejected Baker's assertion that he was not aware of his ability to make a statement, since it was contradicted by the record. (*See* 9/3/2014 Decision at 8.) Similarly, the court was clear that even if Bruno had focused on Baker's "difficult upbringing" it "would not have overcome his refusal to accept responsibility, and the absence of any remorse on his part." (*Id*. at 9.)

For these reasons, I recommend that Baker's ineffective assistance claim regarding sentencing be denied. *See Bethea v. Walsh*, No. 09-CV-05037 (NGG), 2016 WL 258639, at *25 (E.D.N.Y. Jan. 19, 2016) (denying habeas claim for ineffective assistance based on counsel's comments at sentencing) (citing *Perez v. Greiner*, No. 01-CV-05522 (AKH), 2002 WL 31132872, at *8 (S.D.N.Y. Sept. 25, 2002) (counsel not ineffective when "[f]aced with a judge who was thoroughly convinced of his client's guilt . . . wisely chose not to further alienate the judge with unsupportable and self-serving allegations")).

### IV. Petitioner's Claim Regarding His Right To Be Present At Protective Order Hearing Should Be Denied

Finally, Baker argues that he had a constitutional right to be present at the protective order hearing related to the Coles' housing benefit and the withholding of the name of a potential trial witness (Vargas). (Pet. Mem. at 40-47.) This issue was raised by Baker before the Appellate Division. (*See* Pet. App. Div. Br. at 18.)[18]

The Appellate Division ruled against Petitioner, holding as follows:

---

[18] Respondent asserts that Baker did not exhaust the claim that "he did not knowingly and voluntarily waive his right to be present" at the aforementioned hearing. (Resp. Mem. at 59.) However, the state court did not find that Baker waived his right to be present, but instead denied Baker's claim on the merits, which was clearly presented to the Appellate Division. (*See* Pet. App. Div. Br. at 18-30.)

> The court did not violate defendant's right to be present at a material stage of trial when it excluded him, but not his attorney, from a hearing regarding protective orders delaying certain discovery. Defendant has not shown that his presence would have been useful, and his various arguments about his ability to contribute are unpersuasive. In any event, any potential for input from defendant was outweighed by valid concerns for the witnesses' safety, underlying the need for defendant's exclusion.

*Baker*, 139 A.D.3d at 591 (citation omitted).

The question before this Court is whether the Appellate Division's decision was contrary to, or involved an unreasonable application of clearly established law, as determined by the Supreme Court. The Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The constitutional right to presence is "rooted to a large extent in the Confrontation Clause of the Sixth Amendment," and thus clearly encompasses situations in which a criminal defendant is confronting witnesses or evidence against him. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). The Supreme Court has held that it also extends to "some situations where the defendant is not actually confronting witnesses or evidence against him," *id.*, so long as his presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 105-06 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964); *see also Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) ("[A defendant has] a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."). Thus, "there is no constitutional right to be

present 'when presence would be useless, or the benefit but a shadow.'" *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir.2002) (quoting *Synder*, 291 U.S. at 106–07).[19]

The Appellate Division reasonably found that Baker had not shown that his presence would have been useful. *Baker*, 139 A.D.3d at 591. Any information Baker had regarding the Coles' motive to lie in order to obtain a benefit, or about the threats made to them, was not relevant to the purpose of the hearing, which was concerned with protecting the witnesses' safety prior to their testimony. Moreover, Baker has not shown how his absence impacted his defense or impaired his right to cross-examine any of the witnesses. Baker was provided with Vargas' name the day after the hearing in question and, in any event, Vargas never testified. (*See* 4/6/10 Proceedings Tr. at 65.) In addition, Baker was advised of the Coles' housing transfer before they testified and had an opportunity to discuss this issue with his counsel prior to their cross-examination. In any event, counsel chose not to pursue this line of questioning. (*See* Tr. 25-57, 59-65, 72-89.)

For these reasons, I find that the Appellate Division's ruling that the trial court did not violate Baker's right to be present at a material stage of trial is not contrary to or an unreasonable application of clearly established federal law. *See Liggins v. Burge*, 689 F. Supp. 2d 640, 651 (S.D.N.Y. 2010) (state court's determination regarding absence from hearings not unreasonable application of clearly established federal law when did not undermine fairness of proceeding or detract from petitioner's opportunity to defend himself); *Ochoa v. Breslin*, 798 F. Supp. 2d 495,

---

[19] "[W]hile a more expansive right to be present may apply under New York law, that broader right is not applicable in a federal habeas proceeding where it does not implicate the rights of the defendant under the United States Constitution." *Grayton v. Ercole*, No. 07-CV-00485 (SLT), 2009 WL 2876239, at *2 (E.D.N.Y. Sept. 8, 2009), *aff'd*, 691 F.3d 165 (2d Cir. 2012).

505 (S.D.N.Y. 2011) (denying habeas claim that *ex parte* conference violated petitioner's due process rights when petitioner's participation would have been useless).

Accordingly, I recommend that Baker's claim regarding his right to presence at the protective order hearing be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Baker's petition for a writ of habeas corpus be DENIED in its entirety.

DATED: November 25, 2019
     New York, New York

**STEWART D. AARON**
**United States Magistrate Judge**

\*        \*        \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Ramos.

**THE FAILURE TO FILE THESE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF THOSE OBJECTIONS FOR PURPOSES OF APPEAL.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).