IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

UMBRA LLC,

                    Plaintiff,

      -against-

OXO INTERNATIONAL, LTD.

                    Defendant

Civil Action No. 1:19-cv-05955 (ER)

JURY TRIAL DEMANDED

---

## STIPULATED ORDER REGARDING DISCOVERY, INCLUDING THE COLLECTION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

This Stipulated Order sets forth the general agreement between the Parties in the above-captioned matter (each individually, a "Party" and collectively, the "Parties") regarding the production of hard copy documents ("Documents") and electronically stored information ("ESI") in the above-captioned civil action (the "Action").

**I.    GENERAL TERMS**

    A.    **Application.**  The procedures set forth in this Order shall govern the production of Documents and ESI in the Action.

    B.    **Scope of Discovery.**  This Order does not affect the proper subject matter of discovery in the Action nor does this Order imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

C. **Preservation of Data.** Absent a showing of good cause by the requesting Party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

D. **Modification and Amendment.** This Order may be modified or amended by written agreement of the Parties or upon order of the Court.

E. **Reservation of Rights.** The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the Southern District of New York, and applicable Judicial Practice Standards.

II. **COLLECTION OF DOCUMENTS AND ESI**

A. **Timing.** Consistent with this Order, the Parties shall discuss the parameters of their anticipated discovery requests at the initial discovery conference, pursuant to Fed. R. Civ. P. 26(f), which shall take place before any Fed. R. Civ. P. 16 scheduling conference ("Rule 16 Conference").

B. **Content.** The Parties shall discuss the following to the extent not addressed in this Order: (1) the issues, claims and defenses asserted in the case that define the scope of discovery; and (2) the likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians and other data sources (e.g., paper files, email, databases, servers, etc.).

C. **Custodians.** Within 30 days after the Court's issuance of this Order, each Party shall disclose the 5 custodians most likely to have discoverable information in their possession, custody, or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

D. **Sources.** The Parties shall make reasonable efforts to identify and collect any Documents and ESI potentially relevant to this Action from sources of potentially responsive custodial information, including servers, network drives, and shared drives, consistent with the list of custodians disclosed in paragraph C. Within 30 days after the Court's issuance of this Order, each Party shall also disclose: (1) a list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration; (2) any ESI (by type, date, custodian, electronic system or other criteria) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i); (3) any contemplated third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery; and (4) any perceived issues with the production of Documents or ESI subject to privacy protections including information that may need to be produced from outside of the United States and subject to foreign laws.

E. **Search of ESI.** The Parties may use keyword searching to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of this Action. If the producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting Party. Absent a showing of good cause, a requesting Party may request no more than 10 additional terms to be used in connection with the electronic search. The producing Party shall search (i) the non-custodial data sources identified in accordance with Section II(D); and (ii) emails and other ESI maintained by the custodians

3

identified in accordance with Section II(C). If the Parties disagree on the applicable keywords to be used or sources of ESI to be searched, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation will be stayed.

  F. **Other Review Methodologies.** No Party is required to use search terms. The use of search terms does not foreclose a Party's right to use other culling or prioritization technologies. The Parties agree that it is the producing Party's right to determine the best method of search and review and how it will comply with Federal Rule of Civil Procedure 26. To the extent that a Party chooses to search and review using a technology or methodology other than search terms that Party shall disclose its intent to use that technology and the name of the review tool.

  G. **Non-Preservation of Certain ESI.** Absent a showing of good cause by the requesting Party, the following categories of ESI need not be preserved:

   i. Deleted, fragmented, or other data only accessible by forensics.

   ii. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   iii. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   iv. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

   v. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

vi. Voice messages, unless stored or transcribed into a text-searchable format.

vii. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

viii. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

ix. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

x. Logs of calls made from mobile devices.

xi. Server, system or network logs.

xii. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report. Data remaining from systems no longer in use that is unintelligible on the systems in use.

## III. PRODUCTION OF HARD COPY DOCUMENTS

A. **File Type.** The Parties shall produce Documents as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks as well as metadata load files in delimited text format containing available

custodial/container metadata for each hard copy document. The TIFF image must convey the same information as if the Document were produced in paper.

   B. **Extracted Text and OCR.** The producing Party will produce an extracted text file for each electronic document where text can be extracted, and an Optical Character Recognition ("OCR") text file for (i) each imaged paper document, and (ii) each electronic document for which text cannot be extracted. Said extracted text and OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF files.

   C. **Family Groups.** The Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

   D. **Scan Size.** Reasonable efforts will be used to scan Documents at or near their original size, so that the print or image on the Document appears straight, and not skewed.

**IV. PRODUCTION OF ESI**

   A. **File Type.** The Parties shall produce ESI as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields identified below.

   B. **Metadata.** The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified below for production. For each item of ESI, the Parties shall identify the following metadata in their production load files:

    i. Custodian

    ii. File Path

iii. Email Subject

iv. Conversation Index

v. From, To, CC, and BCC

vi. Date Sent and Time Sent

vii. Date Received and Time Received

viii. Filename

ix. Author

x. Date Created

xi. Date Modified

xii. MD5 Hash

xiii. File Size

xiv. File Extension

xv. Control Number Begin and Control Number End

xvi. Attachment Range

xvii. Attachment Begin and Attachment End (or the equivalent thereof)

C. **Native Files.** Microsoft Excel files shall be produced as Native Files. For Excel and other spreadsheet files, the Parties agree to produce a single slipsheet for each Excel file branded with the text "File Produced In Native Format" along with the corresponding Bates number and confidentiality designation. A Party may request that another Party produce other ESI as Native Files for good cause.

D. **Production Format for Databases and Audio-Visual Files.** The Parties agree to meet and confer regarding the production format for non-standard file types, databases, audio/visual, or media files.

E.  **De-duplication.**  A Party is only required to produce a single copy of a responsive document and shall deduplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians.  If deduplication is performed, the identity of the other custodians of deduplicated items must be listed in the "All Custodians" metadata field of the copy of the single record that is produced.  Parties may also thread email documents and review/produce only threaded-inclusive content.  If threading is performed, all Thread Group ID metadata must be produced for inclusive content and preserved for non-inclusive content.

V.  **BATES LABELING/CONFIDENTIALITY DESIGNATIONS**

A.  **Labeling**.  Each page of all images produced (whether Documents or ESI) must be clearly labeled with a unique Bates number identifier electronically "burned" onto the image.  In addition, to the extent any image or file is to be marked confidential, each page of the image or file should be marked with confidentiality designations as set forth in the Protective Order separately entered into by the Parties and ordered by the Court.

B.  **File Names.**  Image file names must be unique and must correspond with the Bates number imprinted on the image.  For example, if the Bates number "B0000001" was imprinted, the image would bear the name "B0000001.tif."

C.  **Authenticity.**  No Party shall object that Documents or ESI produced pursuant to this Order is not authentic based upon the file naming convention described in Section V(B), above.  The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI.

D.  **Native Files.**  If Native Files are produced, the Party producing such Native File shall include a single-image placeholder TIFF with a single Bates number on the image itself.  As stated above in Section IV(C), the slipsheet for each native Excel file will include the text "File

Produced In Native Format" along with the corresponding Bates number and confidentiality designation. The Native File shall be renamed to match the Bates number assigned thereto.

## VI. PRIVILEGE AND REDACTIONS

A. **Scope of Privilege Logging.** The Parties agree that, for purposes of privilege logs prepared in accordance with Federal Rule of Civil Procedure 26(b)(5), the Parties do not need to log material created after the filing of the Complaint in this litigation.

B. **Metadata-Oriented Privilege Logging.** Wherever possible, the Parties agree that privilege logs will be based on the metadata associated with documents withheld on the basis of privilege or the work product doctrine. To the extent withheld documents are email strings, such strings will be logged based on the metadata corresponding to the top-of-chain email. Attachments to emails should be separately logged using their corresponding metadata. To the extent a Party believes the proffered metadata is insufficient to allow for a determination of whether or not a particular document is privileged, or to determine whether to challenge the privilege claim, the Parties will meet and confer as to what additional information is necessary to allow for such a determination.

Dated: November 26, 2019

| | |
|---|---|
| /s/ Michael R. Graif | /s/ Daniel L. Moffett |
| Michael R. Graif | Daniel L. Moffett |
| Harold S. Laidlaw | George Andrew Lever Rosbrook |
| **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.** | **AKIN GUMP STRAUSS HAUER & FELD, LLP** |
| Chrysler Center | 112 East Pecan Street, Suite 1010 |
| 666 Third Avenue | San Antonio, TX 78205 |
| New York, NY 10017 | (210) 281-7000 |
| (212) 935-3000 | dmoffett@akingump.com |
| mrgraif@mintz.com | arosbrook@akingump.com |
| hslaidlaw@mintz.com | |
| | Michael P. Kahn |
| *Attorneys for Plaintiff Umbra LLC* | **AKIN GUMP STRAUSS HAUER & FELD, LLP** |
| | One Bryant Park, 44th Floor |
| | New York, NY 10036-6745 |
| | (212) 872-1082 |
| | mkahn@akingump.com |
| | |
| | Colin Phillips |
| | **AKIN GUMP STRAUSS HAUER & FELD, LLP** |
| | 1111 Louisiana, Floor 44 |
| | Houston, TX 77002 |
| | (713) 220-2205 |
| | cphillips@akingump.com |
| | |
| | *Attorneys for Defendant OXO International, Ltd.* |

IT IS SO ORDERED.

_____
Edgardo Ramos, U.S.D.J
Dated: Nov. 27, 2019
New York, New York